# CHARLESTON.

## STATE v. BALLARD.

Submitted March 8, 1904—Decided March 22, 1904.

1. FELONIOUS ASSAULT.—*Verdict.*
    B. is indicted for the unlawful and felonious attempt to feloniously, willfully, maliciously, deliberately and unlawfully slay, kill and murder. The jury found B. guilty of an attempt to commit murder in the second degree as charged in the indictment. The facts and circumstances prove that, if the pistol shot, alleged in the indictment, and fired by B. at K., but which did not strike him, had resulted fatally to K., B. would not have been guilty of either murder of the first degree, murder of the second degree, or voluntary manslaughter. *Held,* that the verdict of the jury and judgment of the court thereon, fixing the fine of defendant at fifty dollars, and imposing upon him, imprisonment in the county jail for the period of six months, are erroneous. (p. 384).

Error to Circuit Court, Boone County.

O. M. Ballard was convicted of assault with intent to kill and brings error.

*Reversed*

W. L. ASHBY, for plaintiff in error.

ATTORNEY GENERAL and L. FULLER. for the State.

MILLER, JUDGE:

At the October Term, 1902, of the circuit court of Boone County, O. M. Ballard, the plaintiff in error, was indicted for the unlawful and felonious attempt to feloniously, willfully, maliciously and deliberately and unlawfully slay, kill and murder one H. H. Kessinger. At the same term, he entered his plea of not guilty to the indictment and was put upon his trial before a jury, which returned the following verdict: "We, the jury, find the prisoner O. M. Ballardl guilty of an attempt to commit murder in the second degree as charged in the within indictment." Thereupon the prisoner, by his attorney, moved the court in arrest of judgment; and also to set aside the verdict of the jury, and to grant him a new trial upon the indictment; but the court overruled said motions, and the prisoner excepted; whereupon the court fixed his fine at fifty dollars, imposed imprisonment upon him for a period of six months in the county jail, and entered judgment upon said verdict accordingly. To this judgment the plaintiff in error was granted a writ of error, and says that the evidence in the case wholly fails to sustain the verdict of the jury and the judgment thereon, and prays the reversal of said judgment.

The evidence adduced on the trial is certified and made part of the record, and proves the following facts: On the 15th day of August, 1902, at a church in said county, between four and five miles from the home of said Kessinger, and a greater distance from the residence of Ballard, the two had some hot and disrespectful words, and a threat on the part of Ballard to fight Kessinger is shown. Some time afterwards, the parties with others, but not together, started homeward, both traveling in the same direction, and over the same road. It appears that Kessinger and some others were at first in the advance, but that Ballard and another young man passed them on the road. Shortly after this, Kessinger quickened the pace of the mule upon which he was riding, and overtook Ballard, who was on horseback Kessinger testifies that he then told Ballard "to get off of his horse, and let us have a fair fight with our fists, and have it out there. * * * I called him a few names." He admits that, in order to overtake Ballard, he racked and trotted his mule, and might have loped him some. He also says that he

cursed and abused Ballard, and told him to get down and fight, and says that he might have called him a s——— b———, or something like that;" and further admits that when he started his mule in a rack, he meant to overtake Ballard, and "allowed that we might have a little fair fight, and there would be no more of it. I told him that's the way I wanted to fight." It is also shown that just before Ballard and Kessinger reached the place of the shooting on the public road, Kessinger dismounted and, said to Ballard that he intended to whip him; but Ballard told him that he was not going to get off; that very soon thereafter, Kessinger threw a rock, which struck Ballard on the side of the head, knocking off his hat and hurting Ballard, as he says, a great deal; and a little later, Kessinger threw a second rock, which struck Ballard in the back. Kessinger then advanced toward Ballard a few steps, when Ballard turned in his saddle without stopping his horse, which he says was in a little trot, and fired his pistol· in the direction .of Kessinger. There is no dispute about the throwing of the rocks by Kessinger, or of their striking Ballard as stated. Kessinger admits that he threw the rocks, before the shooting; and that it all occurred in a few seconds.

Ballard swears that, when he fired, he neither stopped his horse nor slowed him up; that he shot in the direction of Kes· singer after he received the stroke from the second rock; that he shot, because he was afraid Kessinger would follow him up and throw more rocks at him; that he shot to the left of Kessinger; and that if he had stopped his horse and taken aim, he could have hit Kessinger. It is shown that, at the time, they were not more than ten or fifteen feet apart. Ballard further testifies that he had put his pistol in his pocket the night before. when he had not thought of Kessinger; that he did not have his pistol for the purpose of shooting, and that he did not, at the time, intend to shoot Kessinger. The facts and circumstances seem to corroborate Ballard in this statement. If he had intended beforehand to shoot Kessinger, he could have done so, when Kessinger first came up, and challenged him for a fight, or while Kessinger was riding along with him before the shooting occurred. The shot was fired in front of the house of Kessinger's father in the public road. Ballard had gone beyond the front gate at Kessinger's home, in the direction of his own home.

He was in a place where he had a legal right to be, when attacked by Kessinger. It was shown that the father, mother, cousin and other relatives of Kessinger, were present or very near, when the difficulty occurred. Ballard says that Kessinger could have whipped him in a fight; but admits that he wanted to fight Kessinger in the morning, when the first difficulty occurred; and says that he was then drinking; but had sobered up when Kessinger came up with him on the road; and that he then told Kessinger that he wanted no trouble with him. He says he was "not scared very much; but was hurt a right smart" by the rocks which struck him.

Section 9 of chapter 152 of the Code, provides that: "Every person who attempts to commit an offense, but fails to commit or is prevented from committing it, shall, where it is not otherwise provided, be punished as follows: If the offense attempted, be punishable with death, the person making such attempt shall be confined in the penitentiary not less than one nor more than five years. If it be punishable by confinement in the penitentiary, he shall be confined in jail not less than six nor more than twelve months, and fined not exceeding five hundred dollars. If it be punishable by confinement in jail, or fine, he shall be confined in jail not more than six months, or fined not exceeding one hundred dollars."

This leads to a consideration of the question of the grade of the offense, if any, as shown by the evidence, had the shooting proved fatal to Kessinger, the shot not having touched Kessinger and it not appearing how near to him it came. If the shot fired by Ballard had killed Kessinger, the offense, if any, would not have been murder of the first degree, because all the facts and circumstances show that Ballard did not have, at the time of the shooting, the specific intent to take life, which is always an essential element in the crime of murder of the first degree, and without which, that degree of murder cannot be established. It is urged that Ballard, being on horseback, and some distance from Kessinger, could have retreated and should have done so without firing the shot. In the language of this Court, hereinafter quoted, his very attempt to retreat, under the circumstances shown, might have forfeited his life. He had been twice struck with the rocks thrown by Kessinger, who was still ad-

vancing upon him within distance, and with ability, to strike him again.

In *State* v. *Cain*, 20 W. Va. 679, 703, the Court says: "The distinction between the circumstances, under which a defendant, is compelled by law to retreat before killing his assailant to preserve his own life or to prevent the infliction of great bodily harm upon him, and those, under which without retreating he may kill his assailant in self-defense, is well and sharply drawn. It is absurd to say, that when in the dead of night on the public road or street one is violently assaulted without fault on his part, he is bound to retreat before he uses a deadly weapon in defense of his person. His very attempt to retreat under these circumstances might forfeit his life. This is a very different case from the one, where a man being himself in fault enters into a combat with another. Then he must clear the combat and retreat, as far as safety will permit, before he is justified under any circumstances in taking life on the ground of selfdefense."

In the *Cain Case, supra,* it is held: "When one without fault himself is attacked by another in such a manner or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his life, or to do some great bodily harm, and there is reasonable grounds for believing the danger imminent, that such design will be accomplished, and the person assaulted has reasonable ground to believe, and does believe, such danger is imminent, he may act upon such appearance and without retreating, kill his assailant, if he has reasonable grounds to believe, and does believe, that such killing is necessary in order to avoid the apparent danger; and the killing under such circumstances is excusable, although it may afterwards turn out, that the appearances were false, and that there was in fact neither design to do him some serious injury nor danger, that it would be done. But of all this the jury must judge from all the evidence and circumstances of the case."

It is also held in that case, that: "The bare fear, that a man intends to commit murder or other atrocious felony, however well grounded, unaccompanied by any overt act, indicative of such intention, will not warrant killing the party by way of prevention. To warrant said killing, there must be some overt act indicative of imminent danger at the time; and the acts of the assailant must be such, as under all the evidence and cir-

cumstances of the case convince the jury, that the prisoner had reasonable grounds to believe, and did believe, the danger imminent, and that the killing was necessary to preserve his own life or to protect him from great bodily harm."

So far as the record discloses, Ballard was without fault, at the time he was assaulted by Kessinger with rocks. The difficulty between them in the morning was no legal excuse for the attack by Kessinger at the time of the shooting. The threats and overt acts of Kessinger, and the presence of his father and other relatives at the time were sufficient to put Ballard in fear of great bodily harm, at the hands of Kessinger.

Had the shot fired by Ballard proved fatal to Kessinger, Ballard would not have been guilty, under the facts and circumstances, of either murder in the second degree or voluntary manslaughter, and therefore, could not have been guilty of an attempt to commit either of them.

The verdict finds him guilty of an attempt to commit murder in the second degree. The law affixes the same punishment to a conviction for an attempt to commit either murder in the second degree, or voluntary manslaughter, such conviction being punishable by confinement in the penitentiary.

The verdict and judgment thereon are erroneous. Therefore, the said verdict is set aside; the judgment reversed and held for naught; a new trial upon the indictment is granted to the defendant; and the case is remanded to the circuit court.